UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALICIA SEDORIS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>　　　　Defendant. | No.  2:21-cv-00767 CKD (SS)<br><br><br>ORDER & FINDINGS AND RECOMMENDATIONS |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Disability Income Benefits ("DIB") under Title II of the Social Security Act ("Act").  For the reasons discussed below, the undersigned will recommend that plaintiff's motion for summary judgment be denied and the Commissioner's cross-motion for summary judgment be granted.

BACKGROUND

Plaintiff, born in 1983, applied on September 17, 2018 for DIB, alleging disability beginning November 19, 2017.  Administrative Transcript ("AT") 15, 33.  Plaintiff alleged she was unable to work due to bipolar disorder, post-traumatic stress disorder (PTSD), depression, anxiety, fibromyalgia, and irritable bowel syndrome.  AT 253.  In a decision dated September 9,

////

2020, the ALJ determined that plaintiff was not disabled.[1]  AT 15-34.  The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2021.
>
> 2. The claimant has not engaged in substantial gainful activity since November 19, 2017, the alleged onset date.
>
> 3.     The claimant has the following severe impairments: Dextroscoliosis of the Lumbar Spine; Plantar Calcaneal Enthesopathy; Mild Osteoarthritis of the Right Ankle; Obesity; Depression; Anxiety; Bipolar Disorder; Borderline Personality Disorder; and Posttraumatic Stress Disorder (PTSD).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work except: The claimant can frequently climb ramps and stairs, but can never climb ladders, ropes or scaffolds; she can frequently balance, stoop, kneel and crouch, and can occasionally crawl; she can tolerate no hazards such as machinery and unprotected heights. Due to side-effects of medications and mental impairments, she can understand, remember and carry out simple and routine instructions and tasks; she can have occasional incidental public contact, but cannot work one-on-one with the public; she can have occasional direct coworker interaction and no group tasks, but has no limit on incidental coworker contact; she can have frequent supervisor contact, and can perform no work on a moving conveyor belt.

6. The claimant is unable to perform any past relevant work.[2]

7. The claimant was born on XX/XX/1983 and was 34 years old, which is defined as a younger individual age 18-49 on the date the application was filed.

8. The claimant has at least a high-school education.

9. Transferability of job skills is not material to the determination fo disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled' whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.[3]

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 19, 2017 through the date of this decision.

AT 17-34.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ erred in rejecting the medical opinions of the treating PA-C (certified physician's assistant) and the consultative psychologist; (2) the ALJ erred in discrediting plaintiff's subjective symptom testimony; and (3) the ALJ erred by failing to evaluate and

---

[2] Previously, plaintiff worked as a cook and sales clerk. AT 32-33.

[3] Relying on vocation expert (VE) testimony, the ALJ found that plaintiff could perform occupations such as housekeeping cleaner, mail clerk, and laundry worker. AT 33-34.

3

consider the testimony of a third-party witness.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

    A. Medical Opinions

Plaintiff asserts that the ALJ erroneously discounted the medical opinions of certified physician's assistant Victor Libbey and consultative psychologist Dr. Lea Tate, both of which

////

////

1  bear on the mental RFC.[4]  Because plaintiff filed her disability application after March 27, 2017,
2  the revised agency rules for evaluating medical opinions, set forth below, apply.

3  "The ALJ is responsible for translating and incorporating clinical findings into a succinct
4  RFC."  Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1006 (9th Cir. 2015).  In doing so,
5  the ALJ must articulate a "substantive basis" for rejecting a medical opinion or crediting one
6  medical opinion over another.  Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014); see also
7  Marsh v. Colvin, 792 F.3d 1170, 1172-73 (9th Cir. 2015) ("an ALJ cannot in its decision totally
8  ignore a treating doctor and his or her notes, without even mentioning them").

9  The Ninth Circuit previously has required that, in order to reject an uncontradicted
10  opinion of a treating or examining physician, the ALJ must provide "clear and convincing reasons
11  that are supported by substantial evidence."  Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir.
12  2017); Ghanim v. Colvin, 763 F.3d 1154, 1160-61 (9th Cir. 2014).  Alternatively, "[i]f a treating
13  or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only
14  reject it by providing specific and legitimate reasons that are supported by substantial evidence."
15  Trevizo, 871 F.3d at 675.

16  However, for disability applications filed on or after March 27, 2017, the Commissioner
17  revised the rules for the evaluation of medical evidence at the administrative level.  See Revisions
18  to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg 5844-01 (Jan. 18, 2017).
19  Because Plaintiff filed her SSI application on September 17, 2018, it is subject to the new rules
20  for the evaluation of medical evidence.

21  The revised rules provide that adjudicators for the Social Security Administration,
22  including ALJs, evaluate medical opinions according to the following factors: supportability;
23  consistency; relationship with the claimant; specialization; and other factors such as the medical
24  source's familiarity with other evidence in the record or with disability program requirements.  20
25  C.F.R. § 416.920c(c)(1)-(5).  The most important of these factors are supportability and
26  consistency.  20 C.F.R. § 416.920c(b)(2).  Supportability is the extent to which an opinion or

---

[4] Plaintiff notes that her "physical capacity is not being argued here."  (ECF No. 13 at 11.)

5

finding is supported by relevant objective medical evidence and the medical source's supporting explanations. 20 C.F.R. § 416.920c(c)(1). Consistency is the extent to which an opinion or finding is consistent with evidence from other medical sources and non-medical sources, including the claimants themselves. 20 C.F.R. §§ 416.920c(c)(2), 416.902(j)(1). The ALJ will articulate how she considered the most important factors of supportability and consistency, but an explanation for the remaining factors is not required except when deciding among differing yet equally persuasive opinions or findings on the same issue. 20 C.F.R. § 416.920c(b). When a single medical source provides multiple opinions and findings, the ALJ must articulate how they were considered in a single analysis. 20 C.F.R. § 416.920c(b)(1).

    1. <u>PA-C Libbey</u>

PA-C Libbey was a psychiatric specialist who first examined plaintiff in August 2017 and managed her psychotropic medications throughout the period of alleged disability. AT 25, 631. In December 2017, around the time of the alleged onset date, he filled out a short-form evaluation for mental disorders, diagnosing her with PTSD. AT 631. On the examination portion of the form, Mr. Libbey indicated that plaintiff's memory was impaired, her mood was anxious and depressed, her affect was labile, and she had been drug-free for approximately 180 days. AT 632-633. He further indicated that plaintiff had no hallucinations, illusions, delusions, or preoccupations; her thought process was goal-directed; and that her judgment was mildly impaired, among other findings. AT 632-633.

On the evaluation portion of the form, which required rating the patient's mental functions in a series of checkboxes, Mr. Libbey indicated that plaintiff's ability to understand, remember and carry out complex instructions was "poor." He marked between the boxes for "fair" and "poor" when assessing plaintiff's ability to follow a schedule, maintain regular attendance, complete a normal workday and workweek without interruptions from psychological symptoms, interact appropriately with the public, and respond appropriately to changes in the work setting— indicating that these abilities were on the borderline between "fair" and "poor." AT 634. Mr. Libbey further indicated that plaintiff had "fair" abilities to understand, remember, and carry out simple instructions; maintain concentration, attention, and persistence; and interact with

supervisors and coworkers. AT 634. The form defined the term "fair" to mean that "[t]he evidence supports the conclusion that the individual's capacity to perform the activity is impaired, but the degree/extent of the impairment needs to be further described." AT 634.

The ALJ found this evaluation "unpersuasive," explaining as follows:

> [T]o the extent Mr. Libbey intended to convey that the claimant's impairments do not wholly preclude her from [various work-related mental functions], his opinion seems reasonably consistent with the relevant medical evidence, including his own observations noted [in the December 2017 exam]. As discussed above, with regard to her mental impairments, records show that the claimant has experienced significant improvement with treatment during the relevant period since her alleged disability onset date, and show that her medications have provided fairly good control of her symptoms. Additionally, . . . when he evaluated her in December 2017, Mr. Libbey reported observing the claimant to seem cooperative and only "slightly distracted," with only mildly impaired judgment and memory, and average intelligence, while treatment records show that he has generally observed her to appear well groomed, with good eye contact, normal speech, and good insight and judgment. However, Mr. Libbey's opinion is of relatively scant usefulness in formulating the detailed function-by-function assessment required to ascertain [disability under the Act] due to his failure to more precisely quantify the extent to which the claimant's impairments limit her ability to perform specific mental work activities, [as] the term "fair," as used in his assessment, was defined broadly to mean that the claimant's ability to perform the activity is impaired to a degree which is more than significant but less than completely preclusive.

AT 31 (emphasis added).

In summary, the ALJ reasons as follows: While it is not clear what Mr. Libbey's checkmarks of "fair" and "between poor and fair" mean as far as plaintiff's ability to perform specific mental functions, his opinion is consistent with the medical evidence insofar as suggests that plaintiff can perform some level of mental work. Insofar as the opinion suggests that plaintiff is precluded from all work due to mental symptoms, it is contradicted by evidence of plaintiff's significant improvement between the September 2017 alleged onset date and the December 2017 opinion, and by Mr. Libbey's own treatment records during that time.

Earlier in the decision, the ALJ cites evidence of plaintiff's improvement in mental symptoms between September and December 2017:

> [T]hroughout the relevant period since her alleged disability onset date, records show that the claimant has experienced significant improvement with treatment, and show that her medications have

7

> provided fairly good control of her symptoms. For example, during a visit with Mr. Libbey in early November 2017, records show the claimant reported experiencing some episodes of anger, but reported feeling more stable and better overall, and reported that she was sleeping and eating better, further reporting that her nightmares had resolved completely with [medication]. Similarly, . . . later that month, records show that the claimant reported that she was feeling well, and show that she was observed to seem more euthymic and less tearful. . . . [L]ater that same month, records show that the claimant reported that she was starting to see improvement in her responses to anger, and reported that she was feeling happier and communicating more effectively with her family. Likewise, . . . in November and December, records show the claimant reported improved mood stability.. . . Additionally . . . in December 2017, records show the claimant reported having some difficulty with her depression around the holidays, but reported that she was doing well overall[.]

AT 26 (record citations omitted).

The ALJ also noted that, in his December 2017 examination, Mr. Libbey observed plaintiff to be "cooperative, well-groomed and only slightly distracted, with average intelligence, goal-directed thought processes, and only mildly impaired judgment and memory." AT 28, citing AT 632-633.

The ALJ found Mr. Libbey's opinion supported by the medical evidence, and consistent with Mr. Libbey's own observations, to the extent the checkbox answers indicated that plaintiff was capable of simple and limited mental functioning in a work setting. By incorporating detailed discussions of the evidence in other portions of the opinion, the ALJ articulated how s/he considered the factors of supportability and consistency, and cited substantial evidence in support of these conclusions. While plaintiff argues that the mental health record shows plaintiff experiencing ups and downs and increasing her medication to address recurrent psychological symptoms, a perfect linear progression is not required to show overall improvement. The ALJ's observation that plaintiff's mental symptoms generally improved, in response to therapy and medication, is sufficiently supported by the record.

2. Dr. Tate

Consultative psychologist Dr. Tate conducted a telehealth interview and evaluation of plaintiff on July 6, 2020. AT 1334-1337. She noted that plaintiff was "pleasant and cooperative" throughout the interview, but "seemed depressed," with a depressed mood and affect. AT 1336.

Plaintiff's attention, concentration, memory, judgment and insight were "fair." AT 1336. At the conclusion of her report, Dr. Tate opined on plaintiff's mental functional limitations. AT 1337.

The ALJ summarized Dr. Tate's conclusions: "Following her evaluation of the claimant, Dr. Tate opined that the claimant's ability to understand, remember and complete simple commands is unimpaired, but opined that her ability to understand, remember and complete complex instructions is 'moderately' impaired, as are her ability to maintain workplace, attendance, interact appropriately with supervisors, coworkers and peers, and maintain persistence and pace." AT 31, citing AT 1337.

The ALJ found Dr. Tate's overall opinion "unpersuasive," though she found Dr. Tate's opinion that plaintiff could follow simple instructions "eminently reasonable" in light of the medical evidence and plaintiff's daily activities. AT 32. However, the ALJ wrote,

> Dr. Tate's opinion concerning the claimant's ability to understand, remember and complete complex instructions, interact appropriately with others, and maintain persistence and pace seems someone overly restrictive in light of <u>her own observations</u>. Specifically, . . . while she reported observing the claimant to appear depressed, Dr. Tate reported observing her to seem pleasant and cooperative, and observed her to exhibit fair attention and concentration, with fair insight and judgment, and fair memory. . . . Dr. Tate's opinion concerning the claimant's ability to perform other mental work activities is of fairly limited usefulness due to her <u>failure to define the term 'moderately' or otherwise more precisely quantify the extent to which the claimant's ability to perform those activities is limited</u>. Additionally, with regard to the claimant's ability to maintain workplace attendance, her opinion seems overly restrictive in light of the relevant medical evidence concerning the claimant's mental impairments . . . , which, as discussed, tend to show that the <u>claimant's symptoms have been fairly well controlled</u> throughout the relevant period at issue.

AT 32 (emphasis added).

As with Mr. Libbey's opinion, the ALJ rejected portions of this opinion as "overly restrictive" due to inconsistencies with medical evidence showing plaintiff's overall mental improvement on medication. In an earlier portion of the decision, the ALJ set forth a detailed summary of the mental health evidence between September 2017 and July 2020 (excerpted in part above). AT 25-28. The ALJ noted that, while plaintiff had prior hospitalizations for suicide attempts as late as September 2015, her treatment records after September 2017 on "document

9

few, if any, complaints" of suicidal ideation, and she required no inpatient psychiatric treatment over the next three years. AT 25. The ALJ summarized notes from numerous visits with Mr. Libbey and sessions with her therapist, Sara Rotella, documenting plaintiff's frequent statements that she was making progress in managing her anger, anxiety, and depressive symptoms. AT 25-27. In 2018, for example, plaintiff reported on separate occasions that she was doing well overall and making good progress with her functioning, experiencing improvement with her new medication, and feeling happier after her medication was adjusted, with Ms. Rotella observing a noticeably improved mood. In February 2019, plaintiff complained of anxiety and low motivation but reported that she was functioning well overall, and show that her score on a PHQ-9 screening was only 4, consistent with minimal or mild depression.

The ALJ also noted Dr. Tate's own observation that, while plaintiff appeared depressed at her July 2020 exam, her attention, concentration, memory, judgment and insight were "fair."

Much as with Mr. Libbey's opinion, the ALJ concluded that Dr. Tate's opinion was inconsistent with the medical evidence insofar as it indicated that several of plaintiff's mental functions were "moderately impaired" and/or work preclusive. After a detailed review of the mental health evidence, the ALJ found that plaintiff's mental symptoms generally improved over time in response to therapy and medication.

In formulating the RFC, the ALJ relied on the opinions of two state agency psychological consultants, who opined that plaintiff was moderately limited in her ability to understand, remember, and carry out detailed instructions, but could persist at tasks that could be learned in one to three months, with limited contact with coworkers and the public. AT 29-30. The ALJ found these opinions "reasonably consistent with the relevant medical evidence and evidence concerning the claimant's daily activities[.]" The undersigned finds no error in the ALJ's weighing of the medical opinion evidence.

B. Credibility

Plaintiff next claims that the ALJ erred in discounting plaintiff's statements about her mental symptoms, finding them "not as severe, persistent, or limiting as she has alleged." AT 20, 25.

10

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); see also Lambert v. Saul, 980 F.3d 1266, 1277–78 (9th Cir. 2020).

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. See id. at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment. See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990). .

The ALJ summarized plaintiff's testimony on her mental symptoms:

> [She] testified that she has not been exercising due to her depression

> and medications . . . [and that] her obesity has also exacerbated her depression, stating that she feels 'down in the dumps,' depressed and anxious, and has been sleeping more. [The claimant testified that she has a history of cutting behaviors and hospitalization for suicide attempts, most recently in 2015.] Additionally, due to her anxiety, the claimant testifies that she tries not to leave the house, though she testified that she continues to leave the house about twice a week to go to the grocery store or take her children to doctor's appointments. The claimant further testified that when she has to leave the house to do something, she will feel anxious throughout the preceding day, stating that she will have to take her anxiety medicine to calm down, and clear her schedule so that she can talk through it.
>
> The claimant also testifies that she experiences drowsiness, stating that she is uncertain whether this is caused by her depression or medications, and testified that she takes about three two-hours naps during the day as a result. Additionally, despite her medications, the claimant testifies that she continues to experience tearfulness that occurs for no apparent reason, as well as problems with anger. [Despite anger management classes, she] continues to experience a lot of anger issues, stating that she gets frustrated and angry, causing her to 'explode.' In addition to the foregoing, the claimant testified that her memory has been impacted by her PTSD, and testified that she tends to forget what she is doing and have difficulty staying on task unless she has written instructions laid out in front of her. As a result, the claimant testified that she has to write down instructions in order to complete tasks, which in turn impacts her ability to maintain pace.

AT 22 (record citations omitted).

In assessing credibility, as noted above, the ALJ set out a detailed summary of the mental health evidence throughout the alleged period of disability, including examination findings and medical/therapy notes documenting plaintiff's statements to health providers. AT 25-28. The ALJ summarized the longitudinal mental health record as follows:

> [W]hile the claimant has been treated for multiple mental impairments, records show that [she] has experienced significant improvement with treatment during the relevant period . . . and show that her medications have provided fairly good control of her symptoms. Additionally, . . . records show that [therapist Sara Rotella] has fairly consistently observed the claimant to seem cooperative, with clear speech, average eye contact, a normal appearance, logical thought processes, normal cognition, normal insight and judgment, and average intelligence. Similarly, . . . records show that Mr. Libbey has generally observed her to appear well groomed, with good eye contact, normal speech, and good insight and judgment, and show that Dr. Tate observed her to seem pleasant and cooperative, with fair attention and concentration, fair insight, and fair memory.

AT 30.

"In sum," the ALJ concluded,

> with regard to her mental impairments, the relevant medical evidence of record tends to suggest that the claimant's symptoms are not as severe, persistent, or limiting as she has alleged. As discussed above, while the claimant has been treated for multiple mental impairments, records show that the claimant has experienced significant improvement with treatment during the relevant period since her alleged disability onset date, and show that her medications have provided fairly good control of her symptoms.

AT 28.

Additionally, the ALJ found that plaintiff's reported daily activities undermined the credibility of her testimony about debilitating anger, drowsiness, or other mental symptoms. Records reflect that, during the relevant period, plaintiff droved, cared for three children, helped them with schoolwork during the Covid-19 shutdown, cared for dogs, attended church, visited family, ran errands, prepared meals, went to the gym, walked the kids to school, handled her own finances, got along with authority figures, and did housework. AT 29-31, 273-286, 1335, 732. "Despite her impairments," the ALJ noted, "the claimant testified that she continues to babysit [her] fiance's young children, who the claimant said are currently 9, 20 and 14 years old[.]" AT 29.

> [D]espite her impairments, the claimant reported that she continues to prepare simple meals, including frozen meals and sandwiches, and continues to perform household chores, including dusting, mopping, sweeping and laundry. Despite her impairments and alleged difficulties getting along with others, the claimant also reported that she continues to go grocery shopping and attend church, and reported that she gets along well with authority figures. Additionally, treatment records show that the claimant has continued to attend Narcotics Anonymous meetings, and show that she even began serving as the secretary for her [NA] meetings in 2018. . . . [T]reatment records show that she was, prior to the Covid-19 pandemic, taking [the children] to and from school and preparing meals for them, and show that the claimant has been helping her children complete their schoolwork at home since the pandemic caused schools to close.

AT 29 (citations omitted).

By citing a detailed account of the objective medical evidence, along with daily activities, ALJ used proper process and provided proper reasons, supported by substantial evidence, for finding plaintiff's statements about her allegedly debilitating mental symptoms less then fully

credible. Therefore, the court should defer to the ALJ's discretion on this issue.

### C. Lay Testimony

Lastly, plaintiff asserts that the ALJ erred by failing to evaluate and consider the testimony of a third-party witness: plaintiff's fiancé Misty Sleeper.

"[L]ay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence, and therefore cannot be disregarded without comment." Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996); see also Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993) (friends and family members in a position to observe a plaintiff's symptoms and daily activities are competent to testify to condition). "If the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to each witness." Dodrill, 12 F.3d at 919.

The ALJ reviewed Ms. Sleeper's third-party function report, summarizing it as follows:

> Ms. Sleeper provided statements concerning the claimant's symptoms, limitations, and daily activities <u>similar to those offered by the claimant herself</u>. For example, Ms. Sleeper reported, among other things, that the claimant is 'unpredictable and hot tempered,' experiences frequent nightmares and tearfulness, needs reminders to take care of her personal grooming and hygiene, and has significant difficulty concentrating, understanding and following instructions, and getting along with others.

AT 23 (emphasis added), citing AT 262-272.

"However," the ALJ continued, ". . . the relevant medical evidence of record, discussed and summarized below, provides only limited support for the claimant's testimony and tends to suggest that her symptoms are not as severe, persistent or limiting <u>as has been alleged</u>." AT 23 (emphasis added). The emphasized phrase, preceded by the above summary of Ms. Sleeper's statement, appears to include allegations by both the plaintiff <u>and</u> Ms. Sleeper, as their statements were similar in nature.

The ALJ was not required to explicitly discount Ms. Sleeper's statements to the extent they echoed plaintiff's subjective complaints, which were found not fully credible for the reasons set forth above. See Valentine v. Astrue, 574 F.3d 685, 694 (9th Cir. 2009) (where ALJ provided sufficient reasons for rejecting claimant's own testimony, "it follows that the ALJ also gave

14

germane reasons for rejecting" similar testimony of lay witness).  The undersigned finds no reversible error with respect to lay witness testimony.

CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED THAT the Clerk of Court shall assign a district judge to this action.

IT IS HEREBY RECOMMENDED THAT:

1. Plaintiff's motion for summary judgment (ECF No. 13) be denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 14) be granted; and

3. Judgment be entered for the Commissioner.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  August 25, 2022

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/sedoris0767.dib.ckd_f&rs

15